UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

**In Re:**

**CHARMING CASTLE, LLC,**  BK 06-71420-CMS-7
d/b/a **INDIES HOUSE,**

    **Debtor.**

**ROBERT A. MORGAN, TRUSTEE,**

    **Plaintiff,**  AP 08-70007 CMS

**vs.**

**ROYAL MANUFACTURED HOMES,
LLC,**

    **Defendant.**

## MEMORANDUM DECISION

This matter came before the court on May 13, 2008, and July 8, 2008, for hearing on the Motion to Dismiss ("Motion") filed by Royal Manufactured Homes, LLC ("Defendant"). Deanna L. Weidner appeared on behalf of Robert A. Morgan, Trustee ("Trustee") and Ted Stuckenschneider, P.C. appeared on behalf of the Defendant. After consideration of the arguments made at the hearing and the briefs submitted by all parties, this court will **DENY** the Defendant's Motion to Dismiss for the reasons that follow.

## FINDING OF FACTS

Charming Castle, LLC d/b/a Indies House ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 5, 2006. (Bk. Doc. 1). On December 11, 2006, Debtor filed

1

a Notice of Voluntary Conversion to Chapter 7. (Bk. Doc. 102). An Order Converting Case to Chapter 7 and Order Appointing Robert A. Morgan as Trustee was entered on December 12, 2006. (Bk. Doc. 104). On January 31, 2008, Trustee filed a complaint commencing this Adversary Proceeding seeking "to recover [$338,639.00] due the Debtor for the prepetition sale of goods." (AP Doc. 1 & AP Doc. 19). On April 24, 2008, Defendant filed its Motion to Dismiss alleging lack of jurisdiction and improper venue. (AP Doc. 10).

Debtor is a Limited Liability Company incorporated under the laws of Alabama and is in the business of manufacturing, selling, transporting, and distributing manufactured housing. Defendant is also a Limited Liability Company incorporated under the laws of Louisiana and is in the business of selling manufactured housing directly to consumers. Debtor, by its duly appointed representative, went to Louisiana to solicit business and offered to sell Defendant manufactured homes. Although no written contract was entered into between the Debtor and Defendant, Defendant agreed to purchase said manufactured homes and Debtor produced such manufactured homes. Because St. Landrys Bank provided Defendant with a floor plan line of credit, Debtor sent the invoice to St. Landrys Bank and delivered the homes to Defendant in Louisiana. Unfortunately for the Debtor, St. Landrys did not extend credit for the manufactured homes, and Defendant did not pay for them due to their alleged substandard condition. The money, if any, that Defendant owes Debtor for the receipt of the manufactured homes is an accounts receivable of the Debtor.

The accounts receivable of the Debtor is encumbered by a lien of First National Bank of Jasper ("FNB"). FNB filed a proof of claim in the underlying bankruptcy case of the Debtor. (Claim No. 128). FNB listed its debt, as of January 16, 2008, at $1,653,400.00 and listed the value of the collateral securing its debt at $1,886,160.00. FNB's collateral consists primarily of real estate, but

also includes the equipment, inventory, furniture, fixtures, and accounts receivable of the Debtor. Since the filing of FNB's proof of claim, the Trustee has disbursed monies in the approximate amount of $543,200.00 to FNB. (Bk. Docs. 371 & 378) Pursuant to a Motion to Compromise the Trustee's challenge to FNB's secured status, FNB is entitled to approximately $626,259.00 in further disbursements from the Trustee. (Bk. Doc. 420). Trustee Reports of Sale show $791,000.00 in sales of collateral claimed by FNB (BK Docs. 393, 396, 397, 398, 399, 448). In addition, FNB's Motion for Relief from the Automatic Stay was granted, giving FNB permission to proceed with foreclosure on real property that serves as its collateral. (Bk. Doc. 431). Any proceeds received from this foreclosure will further reduce the amount of FNB's claim. Therefore, although the Debtor's accounts receivable is encumbered by FNB's lien, it appears that there is equity available for the benefit of the Debtor's estate if the Trustee is successful in this cause of action. In addition to the potential equity in the accounts receivable, the Trustee has come to an agreement with FNB whereby the Trustee is entitled to keep 7% of any recovery against Defendant for the benefit of the Debtor's estate.

## CONCLUSIONS OF LAW

The issues that this court must address in ruling on the Defendant's Motion to Dismiss are: (1) whether this court has subject matter jurisdiction over the adversary proceeding; (2) whether this court has personal jurisdiction over the Defendant; and (3) whether this case should be dismissed for improper venue.[1] The issue of subject matter jurisdiction will be addressed first.

---

[1] The Defendant's Motion to Dismiss seeks dismissal of this adversary proceeding "for want of jurisdiction and improper venue." Although "jurisdiction" is a vague term, the briefs of the parties, and the arguments at the hearing make it clear that the Defendant is seeking dismissal for both subject matter jurisdiction and personal jurisdiction. Therefore, this court will address both issues. As a related matter, the Defendant seeks voluntary abstention in its brief to the

3

The statute that governs the jurisdiction of bankruptcy courts is 28 U.S.C. § 1334. Section 1334 provides that district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(b). 28 U.S.C. § 157 permits the automatic reference of this proceeding to this court. A civil proceeding that "arises under title 11" is one that is created by or determined by a statutory provision of title 11. St. Vincent's Hosp. v. Norrel (In re Norrell), 198 B.R. 987, 992 (Bankr.N.D.Ala. 1996). The complaint alleges that Defendant owes Debtor for the prepetition sale of goods. This cause of action is governed by state contract law; therefore, the complaint does not involve causes of action that are created by or determined by title 11. A civil proceeding that "aris[es] in" a title 11 is one that would not exist outside of bankruptcy. Id. As stated above, the cause of action alleged in the complaint is governed by state law; as such it certainly exists outside of bankruptcy. Therefore, the only relevant category in this adversary proceeding is the "related to" category. A proceeding "related to" a case under title 11 has been described as "'the minimum for bankruptcy jurisdiction.'" Continental Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F. 3d 1340, 1345 (11th Cir. 1999) (citation omitted). The Eleventh Circuit Court of Appeals adopted the following liberal test for determining when a bankruptcy court has "related to" jurisdiction:

> "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

---

court. However, the Motion to Dismiss was not amended to seek voluntary abstention and no evidence on this issue was submitted at the hearing. Therefore, the abstention issue will not be addressed because such issue is not properly before this court.

4

Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F. 2d 784, 788 (11th Cir. 1990) (quoting Pacor, Inc. v. Higgins, 743 F. 2d 984 (3d Cir. 1984)). "The key word in the Lemco Gypsum/Pacor test is 'conceivable,' which makes the jurisdictional grant extremely broad." In re Toledo, 170 F. 3d at 1345 (citation omitted). There are two distinct ways in which the cause of action brought by the Trustee on behalf of the Debtor's estate could "conceivably" affect such estate's administration. First, the Trustee and FNB have reached an agreement concerning the release of a portion of FNB's security interest. FNB has agreed to release its security interest as to 7% of any proceeds the Trustee recovers from this adversary proceeding.[2] Once the security interest is released as to the monies, it will be available for distribution to the unsecured claimants of the Debtor's estate. Thus, the agreement between the Trustee and FNB has the effect of reducing FNB's secured claim by 7% of any recovery by the Trustee in this adversary proceeding, which 7% will then be available for distribution to the unsecured claimants in the Debtor's estate. This has an effect on the administration of the Debtor's estate as this agreement both reduces the secured claim of FNB and increases the amount of monies available for distribution to unsecured claimants. Therefore, this court believes that this 7% carve-out agreement between FNB and the Trustee is sufficient grounds to find that this adversary proceeding could "conceivably" affect the administration of this estate.[3] However, even if this carve-out agreement is not sufficient to grant this court "related to"

---

[2]For example, if the Trustee obtains a $100,000.00 judgment against the Defendant and collects upon such judgment, FNB will release its security interest as to $7,000.00 of the recovery.

[3]In this case, Trustee seeks to recover $338,639.00 from the Defendant for the prepetition sale of goods. If the Trustee recovers all of this money, Trustee would be entitled to 7% of the proceeds, which equals $23,704.43. This is not a de minimus amount of money.

5

jurisdiction, this court believes that there is a second grounds for finding this court has "related to" jurisdiction over this adversary proceeding.

The second grounds for finding that this court has "related to" jurisdiction over this adversary proceeding is that FNB is an over-secured creditor, meaning that the value of FNB's collateral is greater than the value of its secured claim. This lawsuit concerns an account receivable of the Debtor because the complaint alleges that Defendant owes the Debtor $338,639.00 for the pre-petition manufacture and delivery of several manufactured homes. FNB holds a security interest in the accounts receivable of the Debtor. FNB filed a proof of claim listing its debt, as of the date of the petition, at $1,653,400.00, and listing the value, as of the date of the petition, of the collateral securing its debt at $1,886,160.00. The proof of claim filed by FNB is prima facie evidence that FNB is over-secured; as such, there are funds available for unsecured creditors in the Debtor's estate from the proceeds of FNB's collateral. The Trustee, as the guardian of the unsecured creditors, is the party charged with maximizing the funds available for payment on unsecured claims. Without the participation of the Trustee in this adversary proceeding, there would be no representative of the unsecured creditors, and no hope for maximizing the dividend to unsecured creditors.[4] Therefore, this court believes that in any adversary proceeding involving the collateral of an oversecured creditor, the result of such adversary proceeding could have a "conceivable" effect on a debtor's bankruptcy estate by increasing the funds available for distribution to unsecured creditors, and the bankruptcy court has "related to" jurisdiction. In addition, the court would note that since the

---

[4] FNB is the only other interested party who has standing to bring this cause of action. However, FNB's sole interest in the lawsuit is to get paid the full amount of its secured claim. It is not entitled to any other monies. Therefore, in any discovery requested or negotiations for settlement agreements, FNB would have no reason to maximize the total recovery as long as it was paid in full from any proceeds.

6

Case 08-70007-CMS    Doc 26    Filed 12/12/08    Entered 12/12/08 14:21:33    Desc Main
Document    Page 6 of 12

petition date, FNB has collected significant funds. FNB has also been granted relief from stay to foreclose the mortgages upon the Debtor's real property and its leasehold interest, the sale of which will either eliminate or further reduce the debt FNB is owed. Thus, it is possible that all of the monies the Trustee is able to recover in this adversary proceeding will be available for distribution to unsecured creditors, which certainly has an affect on the administration of the debtor's estate. Based on the forgoing discussion, this courts finds that it does have "related to" jurisdiction over this adversary proceeding as such adversary proceeding could have a "conceivable" effect upon the Debtor's bankruptcy estate.

The Defendant's next argument in support of dismissal of this adversary proceeding is that the court lacks personal jurisdiction over Defendant. Defendant asserts the following uncontested facts in support of this conclusion: Debtor solicited its business in Louisiana by sending a representative to Louisiana; the sales of the manufactured homes were completed via telephone; and the manufactured homes were delivered by Debtor to Defendant in Louisiana. Defendant argues that because it does not have minimum contacts with Alabama, requiring Defendant to defend a lawsuit in Alabama violates Defendant's due process rights under the 14th amendment. Trustee argues that Bankruptcy Rule 7004 provides for nationwide service of process and therefore, due process allows service of process on anyone who resides in the United States. This court finds that requiring Defendant to defend this adversary proceeding in Alabama does not offend Defendant's due process rights under the Constitution for the following reasons.

When personal jurisdiction is disputed in any proceeding, a court must "first determine whether the applicable statute potentially confers jurisdiction over the defendant, and then determine whether the exercise of jurisdiction comports with due process." Republic of Panama v. BCCI

7

Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997). Bankruptcy Rule 7004 governs when a bankruptcy court has personal jurisdiction over a defendant. Bankruptcy Rule 7004 allows for nationwide service of process in adversary proceedings by providing: "The summons and complaint and all other process except a subpoena may be served anywhere in the United States." Fed. R. Bankr. P. 7004(d). See also K O Trucking Co., Inc. v. Ground Control, Inc (In re K O Trucking Co., Inc.), 99 B.R. 78, 80 (N.D. Ala. 1988) (stating "Rule 7004 clearly provides nationwide service"); Gentry Steel Fabrication, Inc. v. Howard S. Wright Constr. Co. (In re Gentry Steel Fabrication, Inc.), 325 B.R. 311, 316 (Bankr. M.D. Ala. 2005) ("Bankruptcy Rules provide for nationwide service of process of a summons and complaint in an adversary proceeding."). "When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." BCCI Holdings (Luxembourg) S.A., 119 F.3d at 942. As further proof that Bankruptcy Rule 7004(d) provides the statutory basis for this court exercising personal jurisdiction over defendants, Bankruptcy Rule 7004(f) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons . . . in accordance with this rule . . . is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Fed. R. Bankr. P 7004(f). Therefore, because the Defendant is a domestic corporation doing business in the United States and the Defendant was served the summons and complaint in the United States, the statutory basis for personal jurisdiction over Defendant is satisfied. BCCI Holdings (Luxembourg) S.A., 119 F. 3d at 942. That leaves the question of whether the service of the summons and complaint comports with constitutional requirements. "It is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due

8

process derive from the Fifth, rather than the Fourteenth, Amendment." Id. "[T]he Fifth Amendment, like the Fourteenth Amendment, protects individual litigants against the burdens of litigation in an unduly inconvenient forum." Id. at 945. "In order to evaluate whether the Fifth Amendment requirements of fairness and reasonableness have been satisfied, courts should balance the burdens imposed on the individual defendant against the federal interest involved in the litigation." Id. at 946. However, "courts must engage in this balancing only if a defendant has established that his liberty interests actually have been infringed." Id. The defendant must demonstrate that the exercise of jurisdiction by the court will "'make litigation "so gravely difficult and inconvenient" that [he] unfairly is at a "severe disadvantage" in comparison to his opponent.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). The Defendant in this adversary proceeding asserts that the exercise of personal jurisdiction by this court is unconstitutional, i.e. infringes upon Defendant's liberty interests, because Defendant lacks minimum contacts with Alabama. However,

> a defendant's contacts with the forum state play no magical role in the Fifth Amendment analysis. "As a practical matter . . . state lines cannot provide an accurate measure of the burdens that would be imposed on a defendant by requiring him to defend an action in a particular forum. There is nothing inherently burdensome about crossing a state line." Wright & Miller, *supra*, § 1067.1, at 327. Thus determining whether litigation imposes an undue burden on a litigant cannot be determined by evaluating only a defendant's contacts with the forum state. A court must therefore examine a defendant's aggregate contacts with the nation as a whole rather than his contacts with the forum state in conducting the Fifth Amendment analysis.

Id. at 946-47. Therefore, the "absence of minimum contacts with the [forum state] alone is not sufficient to prove that litigation in [such forum state] is constitutionally inconvenient." In re Gentry Steel Fabrication, 325 B.R. at 318. See also BCCI Holdings (Luxembourg) S.A., 119 F. 3d at 948 (holding that the lower court sitting in Florida could properly exercise personal jurisdiction over

9

defendant corporation even though defendant corporation had no minimum contacts with Florida). Defendant failed to meet its burden of proving that litigating this adversary proceeding in this court will infringe upon its liberty interests. As such, this court finds that service of the summons and complaint by the Trustee on the Defendant in this adversary proceeding complies with constitutional requirements; therefore, pursuant to Bankruptcy Rule 7004(f), this court is permitted to exercise personal jurisdiction over the Defendant and dismissal of this adversary proceeding is not warranted.

The Defendant's final argument in support of dismissal of this adversary proceeding is for improper venue. The court would first note that there is no written contract between the parties. Therefore, there is no choice of forum provision at issue in this case. Thus, venue is governed by statute. Venue for proceedings arising under, arising in, or related to bankruptcy cases is governed by 28 U.S.C. § 1409. The relevant subsections of 28 U.S.C. § 1409 are (a) and (b), which provide:

> (a) Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.
>
> (b) Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,100 or a consumer debt of less than $16,425, or a debt (excluding a consumer debt) against a noninsider of less than $10,950, only in the district court for the district in which the defendant resides.

28 U.S.C. § 1409(a) & (b). In the present adversary proceeding, the Trustee seeks a money judgment against the Defendants for $338,693.00. As discussed in detail above, this adversary proceeding is "related to" the underlying bankruptcy and, even if excluding all funds upon which FNB claims a lien and any administrative expenses, the minimum debt the Trustee seeks to collect for the benefit of unsecured creditors is over $23,500.00. This satisfies the requirements of 28 U.S.C. § 1409(a) and renders 28 U.S.C. § 1409(b) inapplicable because the debt the Trustee seeks to collect is over

$10,950.00. Therefore, venue is proper in this court and dismissal of this adversary proceeding upon grounds of improper venue is not proper.[5] As a related matter, the Defendant amended its answer to the Trustee's complaint in this adversary proceeding to add a seventh defense in which Defendant pled "forum non conveniens." Although the Defendant should have amended its Motion to Dismiss, rather than its answer, to request a dismissal on forum non conveniens grounds, this court will address this issue for the sake of judicial economy. "The federal doctrine of forum non conveniens has been largely supplanted by the federal venue transfer statutes." Gunner v. Anthony (In re The Heritage Financial Network), 286 B.R. 318, 319 (Bankr. S.D. Ohio 2002) (citing American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994)). "As a consequence, the federal doctrine of *forum non conveniens* has continuing application only in cases where the alternative forum is abroad." American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994) (emphasis in original). Therefore, this court finds that the doctrine of forum non conveniens does not apply in this adversary proceeding and Defendant's request as to dismissal on forum non conveniens grounds is due to be denied.[6]

This court has "related to" jurisdiction over this adversary proceeding, personal jurisdiction over the Defendant, and venue for this adversary proceeding is proper in this court. Therefore, this court declines to dismiss this adversary proceeding for lack of jurisdiction and improper venue.

---

[5]Jurisdiction is referred to the bankruptcy courts by the General Order of Reference of the United States District Court for the Northern District of Alabama, signed July 16, 1984, as Amended July 17, 1984. The effect of the reference is to make venue proper in the bankruptcy court.

[6]In ruling on this request, the court would note that Defendant neither sought transfer of this proceeding pursuant to 28 U.S.C. § 1412, nor submitted any evidence pertaining to the transfer of this proceeding pursuant to 28 U.S.C. § 1412. Therefore, this court will not address this issue.

Case 08-70007-CMS    Doc 26    Filed 12/12/08    Entered 12/12/08 14:21:33    Desc Main
Document      Page 11 of 12

The court therefore finds that the Defendants' Motion to Dismiss is due to be **DENIED.** An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this December 12, 2008.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge